1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  | BILLIE D. SCOTT,
    | CDCR #AY-8804

12

13  |                          Plaintiff,

14  | vs.

15

16  | FRANK KEVIN YOO, et al.,

17  |                          Defendants.

18

19

Case No.: 21-cv-1319-MMA (KSC)

**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS**

[Doc. No. 5]

**AND DISMISSING THE COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND § 1915A(b)**

20      On July 21, 2021, Billie D. Scott ("Plaintiff"), a state inmate currently incarcerated

21  at California Health Care Facility ("CHCF"), located in Stockton, California and

22  proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983.  *See* Doc.

23  No. 1 ("Compl.").  Plaintiff did not pay the filing fee required by 28 U.S.C. § 1914(a) to

24  commence a civil action when he filed his Complaint; instead, he filed a motion to

25  proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a), along with a motion

26  for extension of time to submit his prison trust account statement.  *See* Doc. Nos. 2, 3.

27      On August 24, 2021, the Court denied Plaintiff's request to proceed IFP, dismissed

28  the Complaint without prejudice, and granted Plaintiff an extension of time to either

prepay the $402 filing fee or file a renewed motion to proceed IFP.  *See* Doc. No. 4.  On August 30, 2021, Plaintiff filed a motion to proceed IFP, along with a copy of this prison trust account statement.  *See* Doc. No. 5.

## I. MOTION TO PROCEED IN FORMA PAUPERIS

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  However, the Prison Litigation Reform Act's ("PLRA") amendments to section 1915 require that all prisoners who proceed IFP to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 83–84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed.  *See* 28 U.S.C. § 1915(b)(1)–(2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires all persons seeking to proceed without full prepayment of fees to file an affidavit that includes a statement of all assets possessed and demonstrates an inability to pay.  *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).  In support of this affidavit, the PLRA also requires prisoners to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of twenty percent (20%) of (a) the average monthly deposits in the account for the past six months, or (b) the average

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2021)).  The additional $52 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4).  The institution having custody of the prisoner then collects subsequent payments, assessed at twenty percent (20%) of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report as well as a Prison Certificate completed by an accounting officer at CHCF.  *See* Doc. No. 5 at 4–7; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119.  These statements show Plaintiff maintained an average monthly balance of $612.37 and had $241.67 in average monthly deposits credited to his account over the six (6) month period immediately preceding the filing of his Complaint.  His available balance as of July 14, 2021, was $589.12.  *See* Doc. No. 5 at 4.  Therefore, the Court **GRANTS** the motion and assesses an initial partial filing fee of $122.47, pursuant to 28 U.S.C. § 1915(b)(1).  The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II. INITIAL SCREENING PER 28 U.S.C. §§ 1915(E)(2)(B) & 1915A(B)

### A.    Legal Standard

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"

*Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Wilhelm*, 680 F.3d at 1121. In deciding whether to dismiss the complaint for failure to state a claim, the court is generally bound by the facts and allegations contained within the four corners of the complaint. *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007). However, if the plaintiff has supplemented the complaint by attaching documents, the court may consider these documents as part of the complaint when determining whether the plaintiff can prove the allegations asserted in the complaint. *During v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, while a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d

677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations [were] not sufficient to withstand a motion to dismiss."  *Id.*

**B.    Plaintiff's Allegations**

Plaintiff alleges that in August 2019, while he was an inmate at R.J. Donovan State Prison ("RJD"), he was referred to Tri City Medical Center ("TCMC") in Oceanside, California for spinal surgery.  *See* Compl. at 3.  The CDCR had a contract with TCMC at the time to treat RJD patients referred there by prison doctors.  *Id.*  Plaintiff was seen by Dr. Yoo, who reviewed Plaintiff's MRI results and told him he needed "corrective surgery on his spine to infuse his vertebral T-11 and T-12, to alleviate the debilitating pain in Plaintiff's lower back."  *Id.*  The surgery was scheduled for sometime in September 2019.  *Id.*  Shortly after seeing Dr. Yoo, Plaintiff's pain worsened and became "unmanageable, causing nerve damage and uncontrollable incontinence and . . . rather than wait for the scheduled September procedure, . . . Plaintiff was sent to TCMC" on August 31, 2021, for an "emergency visit."  *Id.*  Plaintiff was seen by Dr. Yoo again, who recommended they "expedite the surgery to fuse T-11 and T-12."  *Id.*  Plaintiff was told this was "standard procedure" and that Dr. Yoo had performed similar procedures successfully a number of times.  Plaintiff consented to the surgery.  *Id.*

After the surgery, Plaintiff experienced severe pain and learned that "instead of fusing T-11 and T-12, as was agreed during consultations," Dr. Yoo had "installed bolts/hardware into Plaintiff's spin[al] cord [at] T-10."  *Id.*  This required "swift corrective surgery" that was ordered by RJD medical staff.  On September 5, 2019,

Plaintiff was sent back to TCMC for corrective surgery and removal of the wrongly installed bolts/hardware into T-10. While Plaintiff was at TCMC, Dr. Yoo visited him and apologized for his error. *Id.* at 4. After the second surgery, Plaintiff states Dr. Yoo "abandoned him" and he suffered additional complications as a result, including developing fluid in his lungs. As a result of Dr. Yoo performing surgery on the wrong vertebrae, Plaintiff states he has suffered pain, "lifelong mobility impairment and incontinence." *Id.* at 5. He seeks compensatory and punitive damages in a sum to be determined by the factfinder. *See id.*

## C.  42 U.S.C. § 1983

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under section 1983, Plaintiff must allege two essential elements: (1) a right secured by the Constitution or laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

## D.  Eight Amendment Medical Care

To state a claim under the Eighth Amendment, Plaintiff must plead facts to plausibly suggest that Defendants: (1) exposed him to a substantial risk of serious harm and (2) did so with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994); *Iqbal*, 556 U.S. at 678. Specifically, in a medical care case such as this, Plaintiff must first allege he suffered from or faced an objectively "serious medical need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "A medical need is serious when the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096; *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

In addition, Plaintiff must allege facts sufficient to demonstrate Defendants acted with "deliberate indifference" to his serious medical needs. *See Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment," and this includes "indifference . . . manifested by prison doctors in their response to the prisoner's needs.")). "Deliberate indifference is a high legal standard." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)). Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

### 1.    Defendant Dr. Yoo

Plaintiff alleges his Eighth Amendment rights were violated by Dr. Yoo, who he contends was deliberately indifferent to his serious medical needs. Compl. at 3–5. He claims Dr. Yoo was supposed to perform a fusion of his T-11 and T-12 vertebrae but instead, Dr. Yoo "installed bolts/hardware into Plaintiff's spinal cord at T-10 [vertebrae] instead of fusing T-11 with T-12, as was agreed [upon] during consultations based on MRIs [and] X-rays." *Id.* at 3. As a result of Dr. Yoo's error, Plaintiff required corrective surgery a few days later to remove the bolts and hardware from T-10 and to fuse the T-11 and T-12, as originally intended. *See id.*

First, although Dr. Yoo is not a CDCR employee, Plaintiff alleges that the CDCR contracted with TCMC and Dr. Yoo to provide medical services to RJD patients. Compl. at 5. Prison officials act "under color of state law" when housing and providing medical care to prisoners. *See West*, 487 U.S. at 49–50. The court in *West* also held that a "private physician or hospital," like Dr. Yoo, "act[s] under color of law for purposes of

-7-                                           21-cv-1319-MMA (KSC)

§ 1983," when they perform under contract with a state prison, in this case RJD.  *See id.*; *see also Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (per curiam) (finding state action where hospital "contract[ed] with the state . . . to provide medical services to indigent citizens").  Second, Plaintiff has alleged sufficient facts to show he had an objectively "serious medical need."  *See Jett*, 439 F.3d at 1096 (stating that a serious medical need exists when "the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain").

As discussed above, however, to state an Eight Amendment claim based on inadequate medical care, Plaintiff must also allege facts to show Dr. Yoo was "deliberately indifferent" to those medical needs.  To meet this high standard, prison officials must have "a sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834; *see also Toguchi*, 391 F.3d at 1060.  Liability will not lie unless the official knows of and disregards a substantial risk to inmate health or safety.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *see also Hunt*, 865 F.2d at 200.  The state actor must "recognize[ ][an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff."  *L.W. v. Grubbs*, 92 F.3d 894, 898–900 (9th Cir. 1996)).  In other words, the defendant "knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it."  *Id.* at 900.

Here, Plaintiff's allegations do not rise to the level of deliberate indifference.  While Dr. Yoo's purported mistake in operating on the wrong vertebrae is alarming, Plaintiff alleges no facts to suggest Dr. Yoo purposely operated on the wrong vertebrae with the intention to "expose [Plaintiff] to such risks without regard to the consequences."  *Id.* at 899.  Based on the facts alleged in the Complaint, Dr. Yoo seemingly made a terrible mistake.  However, allegations of medical malpractice alone do not rise to a constitutional violation.  *Estelle*, 429 U.S. at 106; *see, e.g.*, *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995); *McGuckin*, 974 F.2d at 1050;

*Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  Instead, Plaintiff must allege that "'the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to [his] health.'"  *Hamby*, 821 F.3d at 1092 (citations omitted).  Here, the facts as alleged are insufficient to state an Eight Amendment claim of deliberate indifference against Dr. Yoo.  *See id.*; *see also Fulford v. Griffen*, No. C 13-2535 CW (PR), 2013 WL 5371878, at *2 (N.D. Cal. Sept. 24, 2013) (concluding plaintiff failed to state a claim for deliberate indifference when he alleged the prison doctor removed half the bone in a toe that was not injured).

### 2.     *Defendant Tri City Medical Center*

Plaintiff also alleges his Eight Amendment right to adequate medical care was violated by TCMC.  Compl. at 5.  Plaintiff contends that at the time of his surgery, TCMC had a contractual relationship with CDCR to provide treatment to RJD inmates.  As such, he has sufficiently alleged TCMC is a state actor.  *See Lopez*, 939 F.2d at 883 (state action was sufficiently alleged by a complaint stating that the defendant hospital was under contract with the State of Arizona to provide medical services to indigents); *George v. Sonoma Cnty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010) ("A private . . . hospital that contracts with a public prison system to provide treatment for inmates performs a public function and acts under color of law for purposes of § 1983.").

Plaintiff's Eighth Amendment claim against TCMC, however, fails for the same reason as his claim against Dr. Yoo.  Plaintiff contends TCMC staff "abandoned" him after his "second surgery by Dr. Yoo, their employee."  Compl. at 5.  He states that after the surgery, "TCMC staff" used an air pump during his recovery to assist him with breathing but the pump was "broken" and caused him to develop fluid in his lungs.  *Id.* This, he alleges, required another corrective procedure to drain the fluid from his lungs.  *Id.*  Plaintiff also contends TCMC "refused to apologize or attempt [to] remedy this

malpractice and battery or this deliberate and 'malicious' indifference." *Id.*

Plaintiff, however, alleges no facts specific to TCMC that rise to the level of deliberate indifference with regard to the surgeries performed by Dr. Yoo.  Further, to the extent he alleges deliberate indifference by TCMC related to use of an allegedly defective "air pump," he does not state that TCMC staff knew the pump was defective when it was initially used to assist Plaintiff after surgery; nor does he allege that when the purported defect was discovered, TCMC staff failed to take corrective action.  *See* Compl. at 5.  Indeed, Plaintiff has not alleged facts to show TCMC "actually intended to expose the plaintiff to such risks [of a faulty pump] without regard to the consequences." *See Grubbs*, 92 F.3d at 898–900.  Thus, the Court finds the facts as alleged are insufficient to state an Eighth Amendment claim of deliberate indifference against TCMC.

**E.   State Law Negligence, Medical Malpractice, and Intentional Tort Claims**

In addition to his Eight Amendment claims against Dr. Yoo and TCMC, Plaintiff alleges Dr. Yoo and TCMC were negligent and committed malpractice.  Compl. at 3–5.  Plaintiff also claims that Dr. Yoo committed the battery under California tort law when he operated on Plaintiff's T-10 vertebrae without his consent.  *Id.* at 3–4.  "In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, "once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  As

discussed above, the Court has found Plaintiff's Complaint fails to state a plausible claim for relief.  Therefore, in the absence of any viable federal claim upon which relief may be granted, the Court exercises its discretion and **DISMISSES** Plaintiff's supplemental state law claims against Dr. Yoo and TCMC without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  *Id.*

**F.    Leave to Amend**

Based on the foregoing, the Court finds Plaintiff's Complaint fails to state any section 1983 claim upon which relief can be granted, and that it must be dismissed sua sponte and in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).  *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.  Because Plaintiff is proceeding *pro se*, however, the Court having now provided him with "notice of the deficiencies in his complaint," will also grant him an opportunity to fix them.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

In light of Plaintiff's *pro se* status, the Court grants him leave to amend his pleading to attempt to sufficiently allege section 1983 claims against Defendants.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar*, 698 F.3d at 1212)).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to proceed IFP pursuant to 28 U.S.C. § 1914(a) and/or 28 U.S.C. § 1915(a) and **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's trust account the $122.47 initial filing fee assessed, if those funds are available at the time this Order is executed, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C.

§ 1915(b)(2).  ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.  The Court further **DIRECTS** the Clerk of Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.  Finally, the Court **DISMISSES** this civil action sua sponte based on Plaintiff's failure to state a claim upon which relief may be granted and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted above.  The Amended Complaint must be complete by itself without reference to his original pleading.  Any defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be considered "waived if not repled").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").  The Court **DIRECTS** the Clerk of Court to mail to Plaintiff, together with this Order, a blank copy of the Court's form "Complaint under the Civil Rights Act, 42 U.S.C. § 1983" for his use in amending.

**IT IS SO ORDERED**.

Dated:  October 7, 2021

HON. MICHAEL M. ANELLO
United States District Judge